*412 OPINION OF THE COURT
George J. Balbach, J.
Petitioner moves to quash or modify a subpoena.
The petitioner in this action is counsel for a nursing home. He was served with a subpoena dated January 24, 1979, which was issued by the office of the Special Prosecutor on behalf of a Queens Grand Jury investigating nursing home abuses. Thereafter, petitioner appeared before the Grand Jury and testified but refused to answer some 24 questions on the grounds that the information which he might supply would violate the attorney-client relationship.
At issue here is petitioner’s unusual contention that knowledge gained as a law student and employee, prior to his admission to the Bar, becomes privileged once he becomes a member of the Bar.
The facts are not in dispute. Petitioner, as a law student, was employed as an assistant administrator of the nursing home from June, 1973 to June, 1975. Thereafter from June, 1975 to February, 1976, the petitioner having successfully completed law school, but before admission to the Bar, served as a clerk to counsel to the nursing home. In February, 1976, petitioner was admitted to the Bar and became a member of the law firm which currently represented the nursing home. In effect, petitioner possesses knowledge derived from three distinct sources, that is: (1) information learned as an administrative assistant; (2) information learned as a law student or clerk to an attorney; (3) knowledge gained in petitioner’s capacity as an attorney. It is maintained that in view of the fact that petitioner has a continuing relationship with the nursing home for a period of over six years, all the knowledge acquired has blended into a unified whole and counsel can no longer distinguish what information he gained as an attorney from those fact acquired during his employee or law clerk stage.
In considering this unique concept of "totality of information”, this court first notes that historically this form of communication is the oldest recognized type of privilege and dates from the reign of Elizabeth I (8 Wigmore, Evidence, § 2290). Traditionally the basis of this privilege lies in the policy of encouraging "persons needing professional advice to disclose freely the facts in reference to which they seek advice, without fear that such facts will be made public to *413 their disgrace or detriment by their attorney” (Hurlburt v Hurlburt, 128 NY 420, 424).
Our present law is statutory and reads in pertinent part: "(a) Confidential communication privileged; non-judicial proceedings. Unless the client waives the privilege, an attorney or his employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication”. (CPLR 4503.)
In applying the privilege, Justice Friendly of the Circuit Court of Appeals set forth the following guidelines: "Certain basic principles, however, are well-established. The privilege finds its justification in the need to allow a client to place in his lawyer the 'unrestricted and unbounded confidence’, United States v. Kovel, supra, 296 F.2d at 921, that is viewed as essential to the protection of his legal rights. But the privilege stands in derogation of the public’s 'right to every man’s evidence’, 8 Wigmore, supra, § 2192, at 70, and as 'an obstacle to the investigation of the truth,’ id., § 2291, at 554; thus, as Wigmore has said, 'It ought to be strictly conñned within the narrowest possible limits consistent with the logic of its principle. ’ Id. It must be emphasized that it is vital to a claim of privilege that the communications between client and attorney were made in confidence and have been maintained in confidence.” (Matter of Horowitz, 482 F2d 72, 81-82; emphasis added.)
For petitioner to prevail then, the burden is upon him to establish his claim of privilege (Bankers’ Money Order Assn. v Nachod, 120 App Div 732) by showing that the information elicited was: (a) a confidential communication; (b) between an attorney and his client; (c) made during the course of professional employment for the purpose of obtaining legal advice (Richardson, Evidence [10th ed], §§ 409, 415). With this background, the court now turns to the different sources of petitioner’s information.
I
INFORMATION GAINED AS AN EMPLOYEE
Before the attorney-client privilege can come into existence *414 the relationship of an attorney and client must exist and the communication must be a confidential one and so be considered by the parties (Rosseau v Bleau, 131 NY 177). As regards the information gained as an employee of the nursing home, it is clear that petitioner never acted in the capacity of an attorney since he was not a member of the Bar. Nor does the fact that he was an employee of the nursing home establish that he was authorized to act on its behalf with attorneys. A client has been defined as a person who consults a lawyer for the purpose of obtaining legal advice or assistance (Richardson, Evidence [10th ed], § 412). There is no evidence here that petitioner acted in such a client’s role either in his capacity as administrative assistant or as an indispensable agent for the nursing home in its legal matters (cf. Lelong v Siebrecht, 196 App Div 74). Indeed, as an employee, his normal duties would be more in the nature of "mechanical or administrative or business” matters rather than legal affairs (see Ford Motor Co. v Burke Co., 59 Misc 2d 543, 546). Therefore, since petitioner has not established that he acted as a client for the nursing home during the period he was employed by them, this court finds no validity to the contention that information acquired during his tenure at this institution was privileged.
Nor can this court accept petitioner’s further contention that the earlier knowledge gained by him carried over to his present communications or that he is unable to distinguish between past and present facts. Such a view could insulate all knowledge possessed by an attorney of his client’s affairs, from any form of public scrutiny and render the privilege meaningless. The statute is precise in that it demands "evidence of a confidential communication”. The burden is on one who asserts the privilege to establish the time, date and place, as well as the nature of such communication. Previous communications are immaterial for the purpose of the statute.
II
INFORMATION OBTAINED AS A LAW STUDENT, LAW GRADUATE OR LAW CLERK
Both common law and our present day statutes have restricted the confidentiality privilege to "a member of the bar of a court” (People v Belge, 59 AD2d 307, 309) who is "licensed by the State to practice law” (Kent Jewelry Corp. v Kiefer, 202 Misc 778, 783). The privilege has never been extended to *415 quasi-legal fields unless the representatives of these professions have been agents of an attorney. Thus a patent agent licensed to practice before Federal administrative bodies does not qualify (Kent Jewelry Corp. v Kiefer, supra); nor does a prison official (People v Wentz, 37 NY 303) or an accountant acting in a business capacity (United States v Kovel, 296 F2d 918). As regards a law student which petitioner was at one stage of his career, there has never been a reported case in this State of a law student’s status, but the general legal view is that a law student giving legal advice as a student does not enjoy the privilege (see Richardson, Evidence [10th ed], § 412). As one Pennsylvania jurist succintly but brusquely put it: "A law student is, in this respect, on no higher plane than a blacksmith retained in a like service” (Schubkagel v Dierstein, 131 Pa 46; see, also, Attorney-Client Privilege — Extent, Ann. 96 ALR2d 125, 143).
The same reasoning would also apply to petitioner in his role as a law school graduate and this background was known to his employees. Since our statute grants the privilege only to an attorney, the fact that one has recently completed law school would still not bring him within the scope of the statute. He must be "licensed by the State to practice law” (Kent Jewelry Corp. v Kiefer, supra). There appears to be no New York case on this issue but the precise point was raised before the court in State v Lender (124 NW2d 355, 359), and at that time a Minnesota jurist ruled "we are not prepared to extend the scope of the attorney-client privilege to prevent disclosure of communications made to a law graduate awaiting his formal admission to practice”. This court believes that such logic is sound and hence holds that the privilege does not cover a law school graduate who has not yet been admitted to practice.
However, our present statute also protects the employees of an attorney and if any of the above named could have qualified under this theory, they could have utilized the privilege in a derivative capacity. Who are an attorney’s employees? Normally "any person whose intervention is necessary to secure and facilitate the communication between attorney and client” (Mileski v Locker, 14 Misc 2d 252, 256). In this regard, it might be noted that section 353 of the former Civil Practice Act — the predecessor of our present statute — stated that "an attorney * * * shall not disclose, or, be allowed to disclose, a communication, made by his client to him * * * nor shall any *416 clerk, stenographer or other person employed by such attorney”. Our present law simply uses the phrase "an attorney or his employee” and enumerates no specific occupations but it is clear that the current statute was not intended to make any substantive changes from the former law. Hence, a clerk (Sibley v Waffle, 16 NY 180) would qualify for the privilege as well as a stenographer (Matter of Putnam, 257 NY 140). A necessary interpreter would also fall under the definition of employee (Mileski v Locker, supra). Thus, it is possible that petitioner in his role as a law clerk could have shared in the privilege of his employer-attorney confidentiality but, once again, the evidence before this court is inconclusive in that it fails to specify what questions asked during the Grand Jury interrogation dealt with this time span and the background of such questions.
Ill
CONFIDENTIAL COMMUNICATIONS AS ATTORNEY
This leads us to the final contention that since petitioner is currently counsel for the nursing home, his dealings with them should be privileged. Again, this court must point out that in addition to the client relationship, petitioner must establish that such communication " 'relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client’ ” (People v Belge, 59 AD2d 307, 309, supra).
Further, petitioner must also establish that if any documents are involved, these documents were not merely given to him to be preserved in a custodial situation (People v Belge, supra); nor is he privileged to refuse to make public the terms of any retainer agreement (Matter of Glines v Estate of Baid, 16 AD2d 753).
Thereafter since it is necessary for this court to know the background of petitioner’s communications with his client, at least in the broad sense, this court directs that a hearing be held on April 18, 1979 for the purpose of determining which of the 24 questions which petitioner has refused to answer before the Grand Jury is privileged. At that time, this court will
*417 apply the basic legal principles enunciated in this memorandum of law.