THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANGELO CURATOLO, Appellant.

Second Department, August 25, 1980

## APPEARANCES OF COUNSEL

*John Joseph Sutter (Ruth C. Balkin* of counsel), for appellant.

*Denis Dillon, District Attorney (Martin I. Saperstein, William C. Donnino* and *Anthony J. Girese* of counsel), for respondent.

### OPINION OF THE COURT

*Per Curiam.*

The defendant pleaded guilty to manslaughter in the first degree following the denial, after a hearing, of his motion to suppress statements and physical evidence. For the reasons which follow, the judgment should be reversed, defendant's guilty plea vacated, and his motion to suppress granted to the extent that the statements and the license plates are suppressed.

On December 8, 1976 the burned body of Lucio Parisi was found in the trunk of a fire-gutted automobile. Covering the

deceased's head was a plastic fertilizer bag. The body was wrapped in a drapery panel. Throughout the trunk area were numerous lead droppings. Also discovered in the trunk were a pair of charred work gloves. The automobile license plates had been removed. The cause of death was determined to have been bullet wounds to the head and torso.

The ensuing investigation revealed that the deceased, who was married to the defendant's niece, maintained relationships with several other women. The deceased's sister told police that on December 7, 1976, Parisi had told her that he was going to meet the defendant at his house at approximately 6:30 P.M. Other relatives of the deceased had also related to the police that the defendant had been attempting to speak with Parisi.

On December 10, 1976 two detectives were sent to bring the defendant to headquarters for questioning. They returned with the defendant at approximately 12:45 P.M. Defendant participated in the interview and answered questions. Although the Italian born defendant speaks in broken English with a heavy accent, the interview was conducted in English, without the assistance of an interpreter. The defendant was eventually asked to take a lie detector test. At approximately 4:00 P.M., defendant agreed to take a lie detector test. Before the test, defendant was asked to sign a consent form which is essentially a waiver of various constitutional rights, including the right to counsel. Because the defendant cannot read English, a detective was called who translated the form into Italian. Thereupon, defendant called an attorney, who spoke first to the defendant and then to the officer who would conduct the polygraph examination. The attorney identified himself as defendant's lawyer and asked what questions would be propounded on the proposed test. A prepared list of questions was then read to counsel who responded that he had no objection if the defendant was willing to take the examination. A separate list of peak attention questions was not read to counsel. Peak attention questions refer to information which the subject would not know unless he were involved in the crime under investigation. After speaking to the officer, the attorney again spoke to the defendant. When the telephone conversation terminated, the defendant told the officer that he would not take the polygraph examination.

At this juncture, shortly after 5:00 P.M., the questioning of defendant essentially ceased. Between 6:30 P.M. and 7:00 P.M.,

the officer interviewing the defendant was advised by another detective that a paramour of the deceased identified defendant as one of two men that she and the deceased had observed in a parked car near her home. This incident occurred a few days before the murder. The defendant was asked about the allegations, but he denied ever being near the location.

At approximately 9:00 P.M., the defendant was taken to his home in Brooklyn. En route, he and the officers discussed the extensive renovations that defendant was doing on his home, which had been badly damaged by fire. Upon arriving at defendant's residence, the officers observed a large waste receptacle of the type usually used at commercial construction sites. Impressed by the obvious size of the renovations, the detective who had interviewed the defendant asked if the defendant would mind showing them the work he was doing. The defendant had no objection and took the officers on a tour of the premises. In the course of the tour, the officers observed metal droppings on defendant's basement floor. The droppings were apparently from molten lead which defendant was using to pour joints on a waste system. As the officers were about to leave, they noticed a torn brown paper bag. Inside the bag, fully exposed to view, was a curtain which appeared to match the drapery panel which covered the deceased's body. Defendant was then questioned about the contents of the bag. Defendant responded that the bag contained drapes that were removed after the fire. The officer then compared the drapery to a photograph of the drapery which covered the deceased's body. Upon verifying that they were the same, the defendant was arrested and advised of his constitutional rights. Shortly thereafter, defendant's wife arrived at the premises. She gave permission to the officers to look around the house, and the defendant nodded his assent. Two fertilizer bags, which were of the same type which covered the deceased's head, were found behind an air conditioner.

Thereafter, at approximately 11:00 P.M., the defendant and his wife were taken to police headquarters in Mineola. Upon their arrival, defendant was again read his rights and questioned at length. Defendant continued to deny any involvement until finally at approximately 12:35 A.M., he was told that the investigation would not stop and that the police would talk to his wife, children and neighbors. Defendant responded that he did not want his wife involved and then made a full statement.

At approximately 5:00 A.M., an Assistant District Attorney attempted to conduct a "Q and A". The interview was terminated when defendant said that he wanted to speak to his lawyer. The transcribed conversation between the Assistant District Attorney and the defendant indicates that defendant may not have previously understood that he had a right to counsel prior to speaking to the police.

Several hours later, police officers overheard the defendant explain to his brother that he had taken the full blame in his statement to the police. Subsequently, search warrants were executed on defendant's residence and automobile. Based upon the statement made by defendant, the police recovered the missing license plates from the waters of the Mill Basin off the Belt Parkway.

■■ Defendant's motion to suppress the statements made to the police and his brother, and to suppress the physical evidence, was denied, after a full hearing. Thereupon, defendant pleaded guilty to manslaughter in the first degree. The only issues raised on appeal concern the denial of the suppression motion. Appellant has argued at length that based upon the coercive atmosphere of the circumstances, coupled with his background, it must be concluded that his waiver of his right to remain silent was not voluntary. Although these arguments are somewhat persuasive, the record supports the contrary conclusion made by the County Court. That factual determination should not now be disturbed simply because a different inference could have been drawn. Similarly, we agree with the County Court that the seizure of physical evidence in the defendant's home and car was proper. The record supports the conclusion that the police officers initially entered the house as invitees for a purpose unrelated to the criminal investigation. The discussion concerned only the renovations being done by the defendant. That the officers fortuitously espied incriminating evidence does not make their actions improper. There is no question that the subsequent arrest of the defendant was founded upon probable cause. The following cursory search of the home was made with the express consent of defendant's wife. There is no evidence of duress and the defendant made no objection to his wife's grant of permission. Under such circumstances, it is clear that the wife's consent to the warrantless search of defendant's home takes the police action beyond the sphere of the exclusionary rule (see *People v Cosme,* 48 NY2d 286). Furthermore, it is note-

worthy that no evidence was actually seized until properly obtained search warrants were executed the next day (cf. *People v Fitzpatrick,* 32 NY2d 499).

■ We agree however with defendant's contention that his statements to the police and his brother, and the license plates should have been suppressed. Suppression is required because defendant, in making his initial incriminatory statement, waived his right to counsel in the absence of counsel. The other evidence must be suppressed as tainted fruit.

■ New York courts have nurtured and expansively applied the principle that "[o]nce a lawyer has entered a criminal proceeding representing a defendant in connection with criminal charges under investigation, the defendant in custody may not waive his right to counsel in the absence of the lawyer" *(People v Hobson,* 39 NY2d 479, 481; *People v Cunningham,* 49 NY2d 203). This rule has been jealously guarded as the pre-eminent protection "against an abuse of power by the organized State" *(People v Hobson, supra,* p 485; see, also, *People v Maerling,* 46 NY2d 289, 303; *People v Settles,* 46 NY2d 154; *People v Cunningham, supra,* p 207). By definition, once an attorney has entered a criminal proceeding, there cannot be a knowing and intelligent waiver of the right to counsel in the absence of counsel *(People v Settles, supra,* p 164; *People v Rogers,* 48 NY2d 167). The rule applies "even when the interrogation concerns unrelated matters" *(People v Rogers, supra,* p 173), and when the accused is represented by counsel on other charges *(People v Rogers, supra; People v Bell,* 50 NY2d 869; *People v Bacote,* 76 AD2d 866).

■ The applicability of this principle to the instant case revolves around the determination of whether counsel had entered the proceeding at the time when the defendant finally waived his rights and made a confession. We conclude that counsel had effectively entered the proceeding at the time that the defendnt called his attorney when asked to take the polygraph examination. At that time the essential criteria of having a right to counsel and overtly manifesting the exercise of such right were fully satisfied.

It is true that the rule enunciated in the *Hobson* line of cases *(supra)* is applied only to an individual who is in custody. We do not depart from that framework. Rather, the defendant was surely in custody at the time of the purported waiver. Although we do not disturb the County Court's conclu-

sion that defendant was not in custody at the earlier time of the attempted polygraph examination, we perceive this as insignificant. Regardless of whether defendant was in fact in custody, he was accorded the full panoply of custodial rights. The defendant was advised of his right to an attorney and when he expressed the desire to consult with counsel before submitting to a potentially incriminating interrogation procedure, his wish was properly respected. At this juncture, it must be concluded that counsel had entered the proceeding and there is no indication that his representation of the defendant ceased prior to the subsequent custodial interrogation (see *People v Singer,* 44 NY2d 241). The contrary result, that a defendant who has both been accorded and exercised the right to counsel within hours of being formally taken into custody is nevertheless not entitled to the protection of the rule that there cannot be a valid waiver of counsel in the absence of counsel, would eviscerate the essential purpose of the rule. Here defendant was continually in the presence of police officers. He was being interrogated as part of a murder investigation which had already uncovered evidence which cast suspicion on him. Having decided that legal advice was necessary before being formally in custody, his need of legal representation was certainly no less after his arrest.

We cannot accept the prosecution's contention that counsel had entered, if at all, only for the purpose of advising as to whether the defendant should take the polygraph test. The right to counsel is far too precious to be artificially limited to particular incidents. Once an attorney has been consulted with reference to a particular criminal investigation, and the police have knowledge that the individual being investigated is so represented, then counsel has entered the proceeding for all purposes. The nature of the relationship between the defendant and his attorney is of little significance in examining the defendant's exercise of the right to counsel, and the prosecution may not "rely on arguable ambiguities in the attorney-client relationship in order to justify police questioning of the defendant without the attorney being present" *(People v Marrero,* 51 NY2d 56). It would be illogical to say that a defendant represented in one criminal proceeding may not be interrogated in the absence of counsel about unrelated criminal activity, but that an individual who has exercised the right to counsel may nevertheless waive counsel, in counsel's absence, in a later, more critical stage of the same criminal proceeding.

It is of no consequence that the attorney did not expressly

advise the police not to conduct a polygraph examination of the defendant. He identified himself as defendant's attorney without limitation. At that point the only salient issue was whether the defendant should take a polygraph examination. How the attorney responded to this particular question has no effect on his continuing representation of the defendant in the on-going criminal investigation and postcustodial interrogation. It is also significant that the defendant refused to take the test immediately upon terminating his discussion with counsel. Thus, regardless of what counsel had said to the police, it may be inferred that he cautioned the defendant against taking the polygraph examination.

What is here dispositive is that the defendant was represented by counsel in the context of this criminal investigation, and that the police had full notice of such representation prior to defendant's purported waiver of his right to counsel once taken into custody. In view of the fact of actual legal representation at the time of custodial interrogation, the defendant could not waive counsel in the absence of his lawyer (see *People v Hobson,* 39 NY2d 479, *supra; People v Cunningham,* 49 NY2d 203, *supra*). Therefore, the police were obliged to respect the defendant's expressed desire to consult counsel and were precluded from questioning defendant in the absence of counsel upon his arrest.

The recovery of the license plates was obviously a direct result of the confession and, therefore, the license plates might be suppressed as tainted fruit. This is also true of the statement to defendant's brother. The statement cannot be characterized as spontaneous since it was obviously prompted by a desire to explain what the defendant had told the police, and by itself was not incriminating. Accordingly, the statements made by the defendant and the license plates should have been suppressed. Consequently, the judgment of conviction must be reversed and defendant's guilty plea vacated.

RABIN, J. P., GULOTTA and MARGETT, JJ., concur; COHALAN, J., dissents and votes to affirm the judgment.

Judgment of the County Court, Nassau County, rendered June 22, 1979, reversed, on the law, guilty plea vacated, motion to suppress granted to the extent that defendant's statements and the license plates are suppressed, and the case is remitted to the County Court for further proceedings consistent herewith.