OPINION OF THE COURT
Walter M. Schackman, J.
The novel issue presented before this court is the following:
Does the District Attorney’s office have the right to discovery of a written statement made by the defendant at the request of his attorney, when the statement is used by the defendant’s psychiatrist in his determination as to the defendant’s claim of innocence by reason of insanity? (Penal Law, § 30.05.)
This court must decide whether the defendant’s statement is protected as a privileged communication (attorney-client and/or doctor-patient), or whether there has been a waiver of any privilege, due to the defendant’s claim of innocence by reason of insanity.
BACKGROUND
The highest count in this indictment charges the defendant with the crime of murder in the second degree, alleg *692 ing that the defendant intentionally caused the death of his mother. The defendant has put forth an insanity defense pursuant to section 30.05 of the Penal Law. In conjunction with this defense, defendant’s counsel had the defendant examined by a psychiatrist, Dr. John Train, on August 4, 1981. Prior to the actual examination, defense counsel supplied Dr. Train with various materials to assist him in his determination, including: piolice reports, CPL article 730 psychiatric reports by two doctors, autopsy report, a copy of the indictment, and defendant’s handwritten 38-page account of the incident (this statement was made at the request of the defense attorney). These materials were provided by defense counsel to Dr. Train with the consent of his client.
The People have moved for the right to have their own psychiatrist examine the defendant to rebut the insanity defense at trial. Statutory and case law clearly indicates that the People are entitled to this examination (CPL 250.10; Matter of Lee v County Ct. of Erie County, 27 NY2d 432; People v Al-Kanani, 26 NY2d 473; People v Di Piazza, 24 NY2d 342; People v Gliewe, 76 Misc 2d 696; People v Blank, 64 Misc 2d 730). If the defendant refuses to submit to a mental examination requested by the prosecution, the court may preclude the defendant from introducing expert testimony on his own behalf (Matter of Lee v County Ct. of Erie County, supra; People v Segal, 54 NY2d 58). However, the prosecutor also moves for discovery of all materials and reports that the defendant’s psychiatrist relied upon in reaching his determination. Defense counsel vehemently opposes discovery of the 38-page handwritten statement made by the defendant. Counsel claims that this statement was made in a confidential capacity and is protected by the attorney-client privilege. He also claims that Dr. Train as an agent of the attorney is also covered by this privilege, as well as the doctor-patient privilege.
The People argue that since Dr. Train was allowed to examine the 38-page statement as a part of the determination as to the defendant’s mental capacity at the time of the alleged incident, the psychiatrist for the prosecution should also be allowed access to the same material. The prosecution argues that since the defendant will be claim *693 ing an insanity defense at trial, the defendant has waived all of his privileges regarding the 38-page statement.
This court has listened to oral arguments and has examined the motion papers submitted by both sides. Neither the People nor the defense has provided any specific case law on this subject.
CONCLUSIONS OF LAW
The principle of attorney-client privilege is well established and relates back to the common law. One author has traced the privilege back to the reign of Elizabeth I (8 Wigmore, Evidence, § 2290). The privilege has been held to be an indispensible part of the constitutional protection against self incrimination (Prink v Rockefeller Center, 48 NY2d 309). A client must feel that he can consult with his attorney free from the possibility that his communication will be later used against him (CPLR 4503). “‘The law will not suffer a prisoner to be made the deluded instrument of his own conviction’ ” (Watts v Indiana, 338 US 49, 54).
However, the attorney-client privilege must also be considered as an accommodation to competing public interests; i.e., the protection of the unauthorized disclosure of communications between the attorney and client versus the public’s right to “everyman’s evidence”. (8 Wigmore, Evidence, § 2291.) Sometimes, the privilege can be viewed as an obstacle to search for the truth.
Therefore, the attorney-client privilege must be strictly confined within the narrowest possible limits consistent with logic and principles of justice (see People v Doe, 99 Misc 2d 411; Mileski v Locker, 14 Misc 2d 252; State v Kociolek, 23 NJ 400, and Ann., 96 ALR2d 125, 147). The attorney-client privilege has been held to extend to direct employees of the attorney (CPLR 4503) and to those necessary intermediaries and agents through whom confidential communications are made (see Sibley v Waffle, 16 NY 180; Matter of Putnam, 257 NY 140; Mileski v Locker, supra). Where this “employee” relationship has been found to be lacking, courts have been reluctant to hold that the privilege would be sustained (i.e., prison officials) (People v Wentz, 37 NY 303), patent agents (Kent Jewelry Corp. v *694 Kiefer, 202 Misc 778), accountants (United States v Kovel, 296 F2d 918), law students (People v Beige, 59 AD2d 307) (see, also, Ann., 96 ALR2d 125). In other cases, courts have ordered hearings to determine the nature and relationship in which the alleged “privileged” communications were given, to determine whether such statements would be protected (People v Doe, supra).
In the case at bar, it is clear that when the defendant made the 38-page handwritten statement at his attorney’s request, it was material normally considered to be protected by the attorney-client privilege. The statement was a confidential communication concerning the incident.
Should Dr. Train, defendant’s psychiatrist, be considered an “employee” of defendant’s attorney under these circumstances, so that the statement in question would still be protected by the attorney-client privilege? To answer this question, a close examination of the “insanity defense” is required.
Section 30.05 of the Penal Law, which relates to the insanity defense, states:
“Mental Disease or defect.
“1. A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity to know or appreciate either:
“(a) The nature and consequence of such conduct; or
“(b) That such conduct was wrong.
“2. In any prosecution for an offense, lack of criminal responsibility by reason of mental disease or defect, as defined in subdivision one of this section, is a defense.” (See Richardson, Evidence [10th ed], § 369.)
CPL 60.55, which relates to psychiatric testimony at trial concerning the defendant’s mental condition, states:
“Section 60.55 Rules of evidence; psychiatric testimony in certain cases.
“1. When, in connection with the defense of lack of criminal responsibility by reason of mental disease or defect, a psychiatrist or licensed psychologist testifies at a trial concerning the defendant’s mental condition at the *695 time of the conduct charged to constitute a crime, he must be permitted to make a statement as to the nature of any examination of the defendant, the diagnosis of the mental condition of the defendant and his opinion as to the extent, if any, to which the capacity of the defendant to know or appreciate the nature and consequence of such conduct, or its wrongfulness, was impaired as a result of mental disease or defect at that time.
“The psychiatrist or licensed psychologist must be permitted to make any explanation reasonably serving to clarify his diagnosis and opinion, and may be cross-examined as to any matter bearing on his competency or credibility or the validity of his diagnosis or opinion.
“2. Any statement made by the defendant to a psychiatrist or licensed psychologist during his examination of the defendant shall be inadmissible in evidence on any issue other than that of the defense of lack of criminal responsibility, by reason of mental disease or defect. The statement shall, however, be admissible upon the issue of the defense of lack of criminal responsibility by reason of mental disease or defect, whether or not it would otherwise be deemed a privileged communication. Upon receiving the statement in evidence, the court must instruct the jury that the statement is to be considered only on the issue of such defense and may not be considered by it in its determination of whether the defendant committed the act constituting the crime charged.”
Subdivision 2 makes it clear that when a defendant raises the defense of insanity at trial, his statements made directly to the psychiatrist are admissible into evidence. Any claim of privileged communications between the doctor and patient are deemed to be waived by the statute. However, the declarations made between the defendant and the psychiatrist are admitted into evidence strictly for the purpose of determining the defendant’s mental capacity at the time of the incident in question. They may not be admitted for the purpose of determining the defendant’s guilt or innocence of the crimes charged. The trial court must properly instruct the jury accordingly.[1]
*696 The statute is a codification of prior case law. It was designed to prevent a defendant from using the plea of insanity as a defense, while also claiming the doctor-patient privilege. This would prevent the prosecution from questioning the defendant’s psychiatrist as to the basis for determining the defendant’s mental capacity at the time of the alleged incident. This statute does not allow a defendant to use the insanity defense as a sword at trial, while using the claim of privilege as a shield to this defense.
Courts have held that when a defendant has claimed innocence by reason of insanity, it is he who has disclosed “the evidence of his affliction” to the public. Thus, this constitutes a waiver as to any claim of privilege, which he normally would have, if he does not put forth such a defense. (People v Al-Kanani, 33 NY2d 260; see, also, People v Stone, 35 NY2d 69.)
As an example of this waiver of the doctor-patient privilege, the prosecution has been allowed to call at trial a psychiatrist who had previously examined a defendant, to rebut the testimony of another defense psychiatrist who testified that the defendant was mentally unfit at the time of the commission of the crime charged (People v Edney, 39 NY2d 620). In its decision, the Court of Appeals stated that the attorney-client privilege and the doctor-patient privilege were completely waived once the defendant entered a plea of innocence by reason of insanity. The court reasoned that the waiver does not prevent a defendant from seeking pretrial psychiatric advice because once the insanity defense is entered, any information that would normally be deemed to be privileged, would be revealed when the defendant is examined by the prosecution’s psychiatrist. Conversely, if no insanity plea is entered at trial, the communications between the defendant and his doctor would be protected. (See People v Di Piazza, 24 NY2d 342, supra; Thorton v Corcoran, 407 F2d 695.)[2]
In the case at bar, however, the 38-page handwritten statement made by the defendant was made at his coun *697 sel’s request. At the time it was actually made, the statement was clearly protected by the attorney-client privilege. Subsequently a decision was made by the client and his attorney that a claim of innocence by reason of insanity might be a viable defense at trial. To this end, the defendant submitted himself to Dr. Train and agreed to supply the psychiatrist with background material (which included the defendant’s 38-page statement) to assist him in his examination. In the psychiatrist’s report, the doctor referred to the 38-page statement as part of the material that he used, to determine that the defendant “at the time of the incident in question as a result of mental disease or defect lacked the substantial capacity to know or appreciate the nature and quality of his act or that it was wrong.”
If this defendant had related orally to his psychiatrist the same material that was contained in his 38-page handwritten statement, such material would clearly not be privileged according to statute and case law. It appears to this court that to hold that the entire 38-page handwritten statement is privileged material because it was first made by the defendant to his attorney, and then turned over to his psychiatrist, would allow a circumvention of the intent of the statute. A defendant who proffers an insanity defense may not hide behind the defense because of his privilege and thereby make the People’s burden of proving sanity insurmountable (Matter of Lee v County Ct. of Erie County, 27 NY2d 432, supra). However, this court is cognizant of the fact that in this case, no subterfuge was intended. To the contrary, at the time the 38-page handwritten statement was made by the defendant to his attorney, there was probably an expectation of confidentiality on the part of the defendant. Such confidentiality was evidently assumed as well, when the material was turned over to Dr. Train.
Also, because this case is still in the pretrial stage of the proceeding, it is impossible at this juncture for the court to determine whether the defendant will actually claim the insanity defense at trial. The Edney (39 NY2d 620, supra) case specified that any claims of privilege are waived if the plea of innocence by reason of insanity is made at trial. If the insanity defense is not used, all communications, in- *698 eluding the 38-page handwritten statement here, would clearly be “privileged communications” not open to discovery by the prosecution.
To wait until the eve of trial when the insanity defense would be invoked to determine whether discovery will be allowed to the prosecution, would also violate the clear intention of the law. The CPL requires prior notice when the insanity defense will be offered at trial. This procedure would also seem to be burdensome on the prosecution as well as the fair and expeditious administration of our judicial system.
Therefore, from the totality of the circumstances and in the exercise of the court’s inherent power to insure fairness as to the competing interest on both sides, the following procedure will be used in this case.
As to the 38-page handwritten statement made by this defendant, this court will order an in camera inspection of the material. All portions of the statement deemed relevant to the specific issue of the defense of insanity will be material discoverable by the prosecution. Therefore, the prosecutor’s psychiatrist will have access to all the same material relevant to the insanity defense which had been available to the defendant’s psychiatrist. All other material contained in the 38-page statement by the defendant will be redacted and protected from discovery by the attorney-client privilege.
Should this court be unable to determine which portions of the 38-page statement are relevant to the insanity defense, the court will hold an in camera hearing with Dr. Train, the defense psychiatrist, to aid in this matter.
This procedure hopefully provides a fair balancing of the rights of both sides and preserves the integrity of the fact-finding process. It preserves the status of confidentiality between the defendant and his attorney as to those issues in the 38-page statement not specifically relevant to the insanity defense. This procedure achieves a result reflecting the clear intention and purpose of the statutes (Penal Law, § 30.05; CPL 60.55).
Pretrial discovery of the material allows the People’s psychiatrist to form an opinion from a position of knowl *699 edge equal to that enjoyed by the defendant’s psychiatrist and operates to prevent any unfair surprise at trial. Hopefully this procedure also preserves the fair and orderly administration of the fact-finding process in regard to trials of this nature.

. However, see the Practice Commentary to CPL 60.55 (McKinney’s Cons Laws of NY, Book 11 A, CPL 60.55) which questions the effect of this instruction on a jury *696 especially where there is an admission by the defendant.

. These communications are to be distinguished from facts and observations disclosed by the attorney himself, to the psychiatrist which would be protected by the work product doctrine (CPLR 3101).