OPINION OF THE COURT
Robert S. Kreindler, J.
Defendant moves to suppress certain anticipated testimony and any fruits thereof on the basis that the testimony would violate the common interest privilege. This decision explains the court’s oral ruling.
Defendants Joseph Pennachio, Steven Ruiz, Anthony Scarpati and John Tánico were indicted for murder in the second degree in connection with the beating death of Manuel Aucaquizphi in Dyker Park. The four defendants and their counsel attended several meetings where it is alleged that a joint defense strategy was discussed. Defendant Tánico subsequently pleaded guilty to manslaughter in the first degree and agreed to testify for the People. The other three defendants allege that Tánico disclosed to the prosecutor communications made in confidence at these joint defense meetings which would be protected under the common interest privilege.
The common interest privilege is an evidentiary rule of exclusion which makes inadmissible certain confidential communications by one party to the attorney for another party where a joint defense effort or strategy has been agreed to by the parties and their attorneys (United States v Schwimmer, 892 F2d 237, 243). The rule serves to protect the confidentiality of such communications where the parties have a joint interest (supra). Only those communications made in the course of an ongoing common enterprise intended to further the enterprise are protected (United States v Schwimmer, 892 F2d, at 243, supra).
The common interest privilege has been adopted by Federal courts (Continental Oil Co. v United States, 330 F2d 347; Hunydee v United States, 355 F2d 183; United States v McPartlin, 595 F2d 1321), as well as several State courts over the past century (Chahoon v Commonwealth, 62 Va 822; Schmitt v Emery, 211 Minn 547, 2 NW2d 413; Visual Scene v Pilkington Bros., 508 So 2d 437 [Fla]). The rule is embodied in Supreme *116 Court Standard 503 (b). Although Supreme Court Standard 503 (b) has never been adopted into the Federal Rules of Evidence, it provides courts with a comprehensive guide to the Federal common law of attorney-client privilege (see, United States v [Under Seal], 748 F2d 871, 874, n 5; Matter of Citibank v Andros, 666 F2d 1192, 1195, n 6). The language of Supreme Court Standard 503 (b) has been incorporated into the statutory evidence codes of Arkansas (Ark Code Annot § 16-41-101), Hawaii (Haw Rev Stat § 626-1, enacting Haw Rev Stat [Rules of Evid] rule 503), Louisiana (La Code Evid Annot art 506), Nebraska (Neb Rev Stat § 27-503), Nevada (Nev Rev Stat § 49.095), Oregon (Ore Rev Stat § 40.225), South Dakota (SD Codified Laws Annot § 19-13-3), Texas (Tex Civ Evid 503), and Wisconsin (Wis Stat § 905.03).
The common interest privilege is not found in New York’s statute dealing with the attorney-client privilege (CPLR 4503).[1] However, some courts have, in dicta, assumed the rule’s existence (see, People v Osorio, 75 NY2d 80, 85; People v Borcsok, 107 AD2d 42, 44; Matter of Two Grand Jury Subpoena Duces Tecum, NYLJ, July 14, 1995, at 26, col 6).
In New York where one attorney represents multiple parties concerning a matter of common interest, any confidential communications exchanged among them are privileged against the outside world (Wallace v Wallace, 216 NY 28; Hurlburt v Hurlburt, 128 NY 420; La Barge v La Barge, 284 App Div 996). Thus, if the four defendants here were represented by a single attorney, then communications exchanged at the joint meetings would be privileged under New York law (supra).
However, both New York and Federal courts have strongly recommended that criminal codefendants retain separate counsel in order to avoid possible conflicts of interest (see, People v Gomberg, 38 NY2d 307, 313; People v Davis, 72 AD2d 69, 74; Smith v Regan, 583 F2d 72, 77; Perez v Metz, 459 F Supp 1131, 1141). To hold that discussions regarding a common defense are privileged only where codefendants are represented by a single attorney would create a dilemma: Should codefendants retain a single attorney who would be faced with possible conflicts of interest or should they retain separate attorneys but lose the advantage of confidentiality?
*117 The common interest privilege is good policy in that it not only provides criminal codefendants with a fair opportunity to mount a proper defense (United States v McPartlin, supra, 595 F2d, at 1336), but also serves to expedite trial preparation and the trial itself (United States v McPartlin, supra, 595 F2d, at 1337).
Considering its policy implications as well as its acceptance in the Federal courts and several other States, this court holds that there exists in New York a common interest privilege. At trial, the court will sustain any objection to testimony that is covered by this privilege.
Assuming that confidential joint defense communications were divulged to the prosecutor by Tánico, the next legal issue for consideration is whether the fruits derived from such communications are suppressible.
Where there is a violation of a defendant’s constitutional rights, any fruits of such violation are suppressible (see, Wong Sun v United States, 371 US 471; Mapp v Ohio, 367 US 643). Both New York and Federal courts have suggested that a Sixth Amendment violation occurs where the government interferes with or intrudes in the attorney-client relationship (see, Massiah v United States, 377 US 201; People v Pobliner, 32 NY2d 356, 364; United States v Melvin, 650 F2d 641, 645). Therefore, if the defendants can show that the prosecutor interfered with their attorney-client relationship or otherwise show government misconduct, suppression of derivative evidence would be appropriate (see, People v Curatolo, 76 AD2d 524, 531).
However, the moving papers contain no indication here of any police or prosecutorial misconduct. There is no proof that Tánico was acting as an informant for the prosecutor nor is there any indication that privileged communications were intercepted or compelled by the government. Because there is no governmental misconduct to be deterred in a situation such as this, there is no need to apply the exclusionary rule traditionally applied to constitutional violations (see, People v McGrath, 46 NY2d 12, 21).
In this case, the papers are insufficient to raise a Sixth Amendment claim. Suppression based on the Sixth Amendment is denied.
Suppression may nonetheless be appropriate where there is a violation of a defendant’s statutory rights (see, People v Patterson, 78 NY2d 711, 717), especially where the statute implicates constitutional rights (see, People v Taylor, 73 NY2d *118 683; People v Gallina, 66 NY2d 52) or substantial privacy interests (see, People v Moselle, 57 NY2d 97).
There are cases in New York holding that the attorney-client privilege "is not constitutionally guaranteed” (People v O’Connor, 85 AD2d 92, 97; People ex rel. Vogelstein v Warden, 150 Misc 714, 716). There are also cases in New York that speak of the attorney-client privilege as having a constitutional dimension (see, Manufacturers & Traders Trust Co. v Servotronics, Inc., 132 AD2d 392, 395 ["The attorney-client privilege * * * is strongly rooted in the constitutional right to counsel”]; see also, People v Hairston, 111 Misc 2d 691, 693; People v George, 104 Misc 2d 630, 633). State courts outside of New York have also suggested that a relationship exists between the attorney-client privilege and the Constitution (see, People v Knuckles, 165 Ill 2d 125, 135, 650 NE2d 974, 979; People v Swearingen, 649 P2d 1102, 1104 [Col]; State v Pratt, 284 Md 516, 520, 398 A2d 421, 423; State v Kociolek, 23 NJ 400, 415, 129 A2d 417, 425).
In spite of the possible constitutional ramifications, information derived from a violation of the attorney-client privilege has been used to establish probable cause for a search warrant by some courts (see, State v Sandini, 395 So 2d 1178 [Fla]; People v Shiflet, 125 Ill App 3d 161, 465 NE2d 942).
In New York it is unclear whether a violation of CPLR 4503 would warrant suppression of its fruits.
In this case, we are not dealing with a violation of the attorney-client privilege. We are dealing with a derivative right not encompassed by any New York statute, and until now never specifically adopted by any New York court.[2] Therefore, the legal analysis employed for other violations of statutes need not be followed.
The attorney-client privilege is an obstacle to the truth-finding process and must be strictly confined within the narrowest possible limits consistent with its purpose (Matter of Jacqueline F., 47 NY2d 215, 218; 8 Wigmore, Evidence § 2291 [McNaughton rev 1961]). While this court adopts the common interest privilege as a matter of policy, it should not be extended to exclude evidence derived from a voluntary disclosure of privileged common interest communications. "[T]he application and scope of the exclusionary rule is ascertained by balancing the foreseeable deterrent effect *119 against the adverse impact of suppression upon the truth-finding process” (People v Drain, 73 NY2d 107, 110).
The purpose of the attorney-client privilege would not be undermined by allowing the use of derivative evidence obtained in circumstances such as those occurring here. To suppress would only create a needless obstacle to the truth-finding process. This is especially true where there has been no governmental misconduct, but voluntary disclosure. Where a civilian voluntarily discloses confidential information, the government does not have to close their ears to such facts. Indeed, the government may be required to investigate a matter based on revealed confidential information.
Suppressing fruits of nonstatutory confidences would unwarrantably hinder the government in their investigatory function.[3]
Therefore, this court will not suppress any competent relevant evidence solely because it was derived from Tanico’s voluntary disclosures of privileged common interest communications.

. The original proposed code of evidence contained such a privilege (Proposed NY Code of Evid § 503 [b] [3] [1980]). The subsequent proposed code of evidence eliminated the common interest privilege (Proposed NY Code of Evid § 504 [1991]).

. People v Osorio (75 NY2d 80, 85, supra) and People v Borcsok (107 AD2d 42, 44, supra) assume such a privilege in dicta.

. What occurs if as a result of a violation of a privilege the police learn of a homicide and the location of the body (see, People v Cassas, 84 NY2d 718; People v Lifrieri, 157 Misc 2d 598)? Is the body suppressed? Can the police investigate whether a homicide was committed?