CONSOLIDATION COAL COMPANY, Plaintiff-Appellee and Cross-Appellant, *v.* BUCYRUS-ERIE COMPANY, Defendant-Appellant and Cross-Appellee.

First District (3rd Division)    No. 79-882

Opinion filed December 1, 1980.—Rehearing denied February 27, 1981.

Quarles & Brady, of Milwaukee, Wisconsin, and Richard E. Mueller, L. C. Hammond, Jr., Hugh C. Griffin, and Michael H. Schaalman, all of Lord, Bissell & Brook, of Chicago, for appellant.

Sidley & Austin, and Robert A. Downing, Arlene C. Erlebacher, Lawrence Zelle, and James D. Steiner, all of Robbins, Davis & Lyons, of Chicago, for appellee.

Miss PRESIDING JUSTICE McGILLICUDDY delivered the opinion of the court:

Consolidation Coal Company (CONSOL) brought an action to recover damages resulting from the collapse of its wheel excavator located in its Illinois mine. The excavator was designed, manufactured and repaired by the defendant, Bucyrus-Erie (B-E), whose principal place of business and corporate headquarters are in Milwaukee, Wisconsin. During litigation of this action, B-E refused to comply with certain discovery orders. Its attorney was held in contempt of court and fined $50. B-E appeals from the entry of contempt sanctions, and CONSOL cross-appeals from the denial of its motion for entry of alternative sanctions.

■■ The issues presented on appeal are: (1) whether the trial court erred in applying Illinois law on attorney work product,[1] (2) whether the

---

[1] Although B-E's brief refers to attorney-client and work product privileges, we note that the former privilege is not applicable to the documents involved in the instant appeal. There are no allegations by B-E that the information accumulated by its in-house counsel was received from members of B-E's control group, a requirement that must be met when a corporation is claiming attorney-client privilege. (*Shere v. Marshall Field & Co.* (1974), 26 Ill. App. 3d 728, 327 N.E.2d 92; *Day v. Illinois Power Co.* (1964), 50 Ill. App. 2d 52, 199 N.E.2d 802.) Thus, we will only address the attorney work product protection and its applicability to the documents involved herein.

reports and notes held by B-E's counsel were their work product and exempt from discovery and (3) whether the contempt sanctions imposed on B-E's attorney were appropriate.

On May 13, 1977, CONSOL filed a request for the production of all of B-E's documents relating to the design, manufacture and engineering of the wheel excavator and all documents relating to the investigation of the excavator's collapse. Although B-E produced thousands of documents for inspection, CONSOL subsequently filed a motion to compel compliance with its discovery request and alleged, among other matters not here relevant, the absence of a post-accident engineering or metallurgical report. B-E replied that the metallurgical report was privileged because it was prepared for consultation purposes only and pursuant to the direction and supervision of one of its attorneys. The trial court ordered B-E to produce any and all statements taken with respect to the matters in controversy, to furnish an affidavit setting forth its compliance with the plaintiff's production request and to identify any materials not produced and the reasons therefor.

B-E admitted that it had not produced the "Sailors' Metallurgical Report," the "Learmont Report" and notes taken by in-house counsel of interviews with B-E's employees in Wisconsin. The court subsequently ordered that these documents be produced for an *in camera* inspection. Applying Illinois law the court held that the metallurgical report and notes were not protected as the attorney's work product and ordered their production with certain specified deletions.[2] B-E refused to produce the requested documents and its attorney, Michael Schaalman, was held in contempt of court and fined.

## I

The first issue presented by B-E is whether the court erred in applying Illinois law concerning the work product privilege. CONSOL contends that B-E waived this issue because its notice of appeal failed to include the court order which held that Illinois law governs discovery. However, an appeal from a "final judgment 'draws in question all prior non-final orders and rulings which produced the judgment.'" (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433, 394 N.E.2d 380.) The notice of appeal in the instant case specified certain orders of the court including the appealable order of contempt. Its reference to the latter order is sufficient to confer jurisdiction on this court to review all preliminary determinations including the conflict of laws ruling.

---

[2] The trial court ruled that the "Learmont Report" was exempt from discovery under the attorney-client privilege. No appeal is taken from the trial court's ruling in this regard.

The scope of attorney work product and the resultant privilege[3] accorded to it differs in Illinois and Wisconsin. In Illinois the work product exemption from discovery is set forth in Supreme Court Rule 201 (Ill. Rev. Stat. 1977, ch. 110A, par. 201), which was derived from *Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 221 N.E.2d 410. (See Ill. Ann. Stat., ch. 110A, par. 201, Historical and Practice Notes, at 122 (Smith-Hurd 1968); Tone, *Comments on the New Illinois Supreme Court Rules*, 48 Chi. B. Rec. 46 (1967).) If a document is part of the attorney's work product, it has an absolute privilege or exemption. (Burnham, *Confidentiality and the Corporate Lawyer: The Attorney-Client Privilege and "Work-Product" in Illinois*, 56 Ill. B.J. 542 (1968).) *Monier*, by its narrow construction of work product, liberalized discovery by stating:

"[o]nly those memoranda, reports or documents which reflect the employment of the attorney's legal expertise, those 'which reveal the shaping process by which the attorney has arranged the available evidence for use in trial as dictated by his training and experience,' [citation] may properly be said to be 'made in preparation for trial'." (35 Ill. 2d 351, 359-60, 221 N.E.2d 410, 416.)

Documents "made in preparation for trial" and exempt from discovery were those that contained the attorney's mental impressions of prospective clients, those that revealed a particular marshalling of evidentiary facts for presentment at trial and those that revealed the attorney's mental processes in shaping his theory of his client's cause. Memoranda and the like containing all other material and relevant evidentiary facts that would not disclose conceptual data were thus subject to the truth-seeking process of discovery.

Wisconsin similarly defines an attorney's work product as information the attorney "has assembled and the mental impressions, the legal theories and strategies that he has pursued or adopted as derived from interviews, statements, memoranda, correspondence, briefs, legal and factual research, mental impressions, personal beliefs, and other tangible or intangible means." (*State ex rel. Dudek v. Circuit Court* (1967), 34 Wis.2d 559, 589, 150 N.W.2d 387, 404.) However, case law has adopted a broader view of attorney work product to protect most materials and information collected and adopted by a lawyer after retainer in preparation of litigation. *State ex rel. Dudek* expressly refused to limit the work product privilege to subjective mental processes, and subsequent cases have held that the work need not have been actually done by the attorney

---

[3] It has been argued that the work product principal is not properly a "privilege" but merely a requirement that good cause be shown if the disclosure is made in the course of a lawyer's preparation of a case. (See Annot., 35 A.L.R.3d 412, 423, 426 n.10 (1971).) This analysis would not apply in Illinois, however, because a showing of good cause would not lead to the discoverability of material determined to be an attorney's work product.

or at his request as long as it was adopted by him and became a part of his file of the case (*State ex rel. Shelby Mutual Insurance Co. v. Circuit Court* (1975), 67 Wis.2d 469, 228 N.W.2d 161). (*Shibilski v. St. Joseph's Hospital of Marshfield, Inc.* (1978), 83 Wis.2d 459, 266 N.W.2d 264.) Materials considered to be the attorney's work product are merely given a qualified privilege and may be discoverable upon a showing of good cause. (*State ex rel. Dudek.*) The extent of the showing of good cause depends upon the type of materials sought and the extent of the attorney's involvement in the preparation thereof. See, *e.g., Shibilski; State ex rel. Dudek.*

■■ CONSOL has made no showing of good cause or necessity in support of its discovery request.[4] Thus, assuming the materials it seeks fall within Wisconsin's broad interpretation of work product, CONSOL would not be entitled to inspect them. For reasons stated later in this opinion, the materials sought by CONSOL would be discoverable under Illinois law. Therefore, a true conflict of laws exists, and we must choose between the laws of these two sovereigns. See, *e.g., Melville v. American Home Assurance Co.* (3d Cir. 1978), 584 F.2d 1306; *Henderson v. State Farm Mutual Automobile Insurance Co.* (1973), 59 Wis.2d 451, 208 N.W.2d 423. But see, *e.g., Erwin v. Thomas* (1973), 264 Or. 454, 506 P.2d 494, and Sedler, *Conflict of Laws Round Table: The Value of Principled Preferences*, 49 Tex. L. Rev. 224 (1971) (existence of conflict not determined by different laws and results but by different governmental interests).

B-E argues that the conduct of its Wisconsin attorneys should be governed by the law of Wisconsin, the State where its attorneys are authorized to practice law and that State with the most significant interest. CONSOL relies on *People v. DeMorrow* (1974), 59 Ill. 2d 352, 320 N.E.2d 1, and *People v. Saiken* (1971), 49 Ill. 2d 504, 275 N.E.2d 381, *cert. denied* (1972), 405 U.S. 1066, 31 L. Ed. 2d 796, 92 S. Ct. 1499, and asks this court to extend the rulings in those cases and hold that rules on privileges are procedural rules of evidence governed by the laws of the forum.[5]

---

[4] During pretrial motions and on appeal CONSOL has taken the position that Illinois law governs this issue and that, therefore, a showing of good cause is not required.

[5] Where the procedural-substantive distinction is made, there is disagreement as to which category rules on privileges fall. Corpus Juris Secundum states that rules on privileges are not substantive but mere rules of evidence. (97 C.J.S. *Witnesses* §252, at 739 (1957). See also *Mileski v. Locker* (1958), 14 Misc.2d 252, 178 N.Y.S.2d 911; 37 Ill. L. & Prac. *Witnesses* §61, at 68 (1958).) However, Federal courts exercising diversity jurisdiction have usually treated State privileges substantively and applied the forum's law. See, *e.g., Palmer v. Fisher* (7th Cir. 1955), 228 F.2d 603, *cert. denied sub nom Fisher v. Pierce* (1956), 351 U.S. 965, 100 L. Ed. 1485, 76 S. Ct. 1031; *Mitsui & Co. v. Puerto Rico Water Resources Authority* (D.P.R. 1978), 79 F.R.D. 72; *Application of Cepeda* (S.D.N.Y. 1964), 233 F. Supp. 465. But see, *e.g., Ex parte Sparrow* (N.D. Ala. 1953), 14 F.R.D. 351. See generally Annot., 95 A.L.R.2d 320, 327-28, 330-35 (1964).

Under either argument, however, we believe Illinois law governs the issue of work product. If work product is considered a procedural issue, the forum law would apply. Were we to adopt the rationale of B-E, using the most significant relationship test set forth in the Restatement (Second) of Conflict of Laws (hereinafter cited as Restatement (Second)) the forum law again would control. The Restatement (Second) has established choice of law rules to resolve the issue of admissibility of certain information and documents upon which a privilege is claimed. (See Restatement (Second) § 139, at 385 (1971).) We believe these rules also can be applied to the issue of discoverability of those same materials.

■■ Applying the Restatement (Second) rules, Wisconsin would be the State with the most significant relationship with the communication because that State is the State where the communication took place. The communication is said to take place where the oral interchange occurs, where the written statement is received or where the inspection of a person or thing is made. (Restatement (Second) § 139, comment (e), at 389 (1971).) However, the law of the State with the most significant relationship does not necessarily govern the conflict of laws problem. The choice of laws rule applicable to the facts in the instant case states:

> "(2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect." (Restatement (Second) § 139, at 385 (1971).)

We have reviewed the countervailing considerations in favor of Wisconsin's policy (see Restatement (Second) § 139, comment (d), at 387-88 (1971)) and have determined that they do not outweigh the Illinois policy favoring discoverability. Therefore, Illinois law allowing discoverability governs the case at bar under either argument presented by the parties, and the trial judge was correct in so finding.

## II

The two materials sought by CONSOL that are the subject of this appeal are the "Sailors' Metallurgical Report" and notes taken by B-E's in-house counsel of interviews with B-E's employees. The metallurgical report was prepared by Richard Sailors, an engineer and employee of B-E. B-E's memorandum of law in support of the affidavit of compliance stated that Sailors examined certain pieces of the damaged wheel excavator at the request of Lennart Hansson, B-E's engineer who oversees technical aspects of litigation involving mining machinery. Sailors reduced his examination and analysis to a written report and photographs which

were given to Hansson who gave the information to David Goelzer, one of B-E's attorneys.[6] According to Goelzer's affidavit, Sailors "came to certain conclusions as a result of said examination all of which were necessary for the defense and preparation for defense for said potential cause of action."

B-E contends that Sailors' report was part of Goelzer's work product because it was an expert's report designed only to assist Goelzer in formulating litigation strategy. It cites dicta in *Klick v. R. D. Werner Co.* (1976), 38 Ill. App. 3d 575, 348 N.E.2d 314, which stated the advice of an expert given to an attorney regarding "the 'proper technical interpretation of certain facts and of the state of technical information' " (38 Ill. App. 3d 575, 579, 348 N.E.2d 314, 317) is work product and not discoverable.

As discussed above, *Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 221 N.E.2d 410, by giving work product a limited definition, has led the way for liberalized discovery. *Monier* expressly limited work product to the protection of trial strategy and those memoranda, reports or documents reflecting employment of the attorney's legal expertise. The work product rule explained in *Monier* would not protect material and relevant evidentiary facts.

Looking to the facts in the instant case there is no support for B-E's contention that Sailors' report is part of its attorney's work product as defined in Illinois. The "report" is a notebook consisting of mathematical computations, formulas and tables, drawings, photographs, industry specification data, miscellaneous notes and a six-page handwritten document captioned "Comments on Fracture from Wheel Excavator 1060 WX," which discusses the location and suspected causes of cracks on the wheel excavator. Upon an *in camera* inspection, the trial court determined that, with the exception of arrows on certain photographs[7] and a six-word statement, the report did not contain work product. A page of notations was excluded from production because of irrelevancy.

■■ Our review of the report leads us to a conclusion that it is not work product and thus not protected from discovery on that basis. With the exception of the irrelevant document discussed above, the report contains objective and material information that does not reflect or disclose the theories, mental impressions or litigation plans of B-E's attorney. There-

---

[6] An amended affidavit submitted by Sailors stated that a request by B-E's attorneys precipitated his examination and that his notes were prepared for the exclusive use of B-E's attorneys in evaluating the merits of plaintiff's claims and developing substantive defenses.

[7] The trial court's written order of October 23, 1978, stated the Sailors' Metallurgical Report contained 10 photographs with arrows whereas the transcript of the judge's oral pronouncements indicated that there were "approximately ten photos with arrows." The notebook actually contained seven photographs with arrows, some of which were duplicates.

fore, we affirm the trial court's order of October 23, 1978, finding the Sailors' Metallurgical Report discoverable but modify it to the extent that no deletions from the relevant documents should be permitted.

The other materials sought by CONSOL were B-E's attorneys' notes of their conversations with several B-E employees who were familiar with the events relating to the construction, repair, collapse and post-collapse repair of the wheel excavator. The notes were not signed, altered or corrected by the employees. B-E argues that the notes should be exempt from discovery because they were designed to aid in the formulation of its litigation strategy.

■■ We disagree. With limited exception, the notes, prepared by B-E's in-house counsel, contain factual accounts by B-E's employees of their involvement in the events prior to and subsequent to the collapse of the wheel excavator. We believe these notes are similar to verbatim statements of witnesses which, in *Monier v. Chamberlain*, were distinguished from memoranda made by counsel of impressions of prospective witnesses. *Monier* held the latter exempt from discovery because they revealed the attorney's mental processes in shaping litigation strategy. To the extent that the attorneys' notes in the instant case were recitations of their conversations with B-E employees and did not reveal the attorneys' mental processes in shaping litigation strategy, we agree with the trial court's determination that they are not work product and should be produced for inspection by CONSOL. The trial court concluded that the last document, referred to in the December 12, 1978, order as A.15., was entirely work product because it contained a marshalling of facts by B-E's counsel. We also affirm this finding.

■■ For similar reasons, however, we must reverse the trial court's finding that the comments referred to in parts A.7., A.9., A.11. and A.13. of the order dated December 12, 1978, are work product. These comments either disclose additional evidentiary facts or raise factual questions. They do not reveal the attorneys' mental impressions or processes in shaping defense theories nor do they reflect the employment of the attorneys' legal expertise. Thus, these documents must be produced in their entirety.

We also reverse the trial court's finding that the entire document referred to in A.14. of the December 12, 1978, order was discoverable. Certain portions of that document reveal the thought processes of the attorney as well as litigation plans and mental impressions of the strength of B-E's position. Therefore, we find that the following portions of that document should be deleted by B-E before production to CONSOL:

(1) Page 1 - Entire last paragraph that begins at bottom of page and continues at top of page 2.

(2) Page 2 - Last sentence of first full paragraph beginning with "At" and ending with "has."

(3) Page 2 - Last sentence of second full paragraph beginning with "We" and ending with "shovels."

(4) Page 2 - Entire third full paragraph.

(5) Page 3 - Last two words at bottom of page and remainder of paragraph at top of page 4.

(6) Page 4 - Last two sentences of first full paragraph beginning with "Further" and ending with "repair."

(7) Page 4 - Sixth sentence of second full paragraph beginning with "It" and ending with "doing."

(8) Page 4 - Entire last paragraph that begins at bottom of page and continues at top of page 5.

(9) Page 5 - Entire page.

Subject to the modifications discussed above, the discovery orders of the trial court are affirmed.

### III

Due to the defendant's failure to comply with the production orders discussed above, the defendant's attorney was held in contempt of court and fined $50. CONSOL's cross-appeal raises the issue of whether this nominal sanction was sufficient in view of its request that the defendant be ordered to pay the plaintiff's attorney's fees incurred in connection with its efforts to obtain compliance with discovery, that the defendant be debarred from calling as witnesses those individuals whose reports or interviews had not been produced, that the defendant be debarred from introducing metallurgical evidence, and, alternatively, that a default judgment be entered against the defendant.

The sanctions which may be imposed by a trial court to compel compliance with rules or orders relating to discovery are set forth in Supreme Court Rule 219 (Ill. Rev. Stat. 1977, ch. 110A, par. 219). These sanctions are to be used to accomplish discovery, not to punish the dilatory party. (*People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 226 N.E.2d 6; *Williams v. City of Chicago* (1977), 54 Ill. App. 3d 974, 370 N.E.2d 119.) The trial court has broad discretion in imposing reasonable sanctions, and a court of review will not interfere with the action taken by the trial court unless there has been an abuse of discretion. *Humboldt-Armitage Corp. v. Illinois Fair Plan Association* (1980), 86 Ill. App. 3d 888, 408 N.E.2d 307; *Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 388 N.E.2d 770; *Department of Transportation v. Mainline Center, Inc.* (1976), 38 Ill. App. 3d 538, 347 N.E.2d 837.

The particular sanction to be imposed on the offending party

depends upon the facts in each case. (*Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 366 N.E.2d 327.) We believe the cases cited by the plaintiff to support the sanctions it seeks are factually different. In each of those cases the noncompliance was vexacious (*e.g., Savitch v. Allman* (1975), 25 Ill. App. 3d 864, 323 N.E.2d 435) or an unreasonable and continued disobedience and disregard for the courts' authority and the discovery rule or orders (*e.g., Stevens v. International Farm Systems, Inc.* (1978), 56 Ill. App. 3d 717, 372 N.E.2d 424; *Williams; 612 North Michigan Avenue Building Corp. v. Factsystem, Inc.* (1975), 34 Ill. App. 3d 922, 340 N.E.2d 678). See *Humboldt-Armitage Corp.*; Johnston, *Some Observations on the New Rules*, 48 Chi. B. Rec. 117, 118 (1967).

■■ B-E's actions in the instant case do not evidence a disregard of the trial court's authority nor do we believe that B-E engaged in a pronounced effort to prolong the litigation. B-E responded timely to CONSOL's initial production request and furnished a considerable number of documents. Upon entry of the trial judge's production orders, B-E immediately notified the court and counsel that it would not comply with the orders so that contempt proceedings would begin and an appealable order could be rendered. Seeking the entry of a contempt order, which is ordinarily final and appealable, is an appropriate method of testing a pretrial discovery order. (*People ex rel. General Motors Corp.; Bicek v. Quitter* (1976), 38 Ill. App. 3d 1027, 350 N.E.2d 125.) B-E's actions indicate a good faith effort to exempt certain documents from the discovery process based on a belief that the documents were privileged. Under the circumstances presented, we do not believe that the trial court abused its discretion when it did not impose the sanctions requested by CONSOL.

For the foregoing reasons the orders of the Circuit Court of Cook County are hereby affirmed as modified and this matter is remanded for further proceedings consistent with the views expressed herein.

Affirmed in part, modified in part and remanded.

SIMON and RIZZI, JJ., concur.