MAREMONT CORPORATION, Plaintiff-Appellant, v. EDWARD WILLIAM CHESHIRE, Indiv. and as Representative Underwriter on Behalf of Certain Underwriters at Lloyd's of London, *et al.*, Defendants-Appellees.

First District (4th Division) Nos. 1—96—0146, 1—96—2466, 1—96—3186 cons.

Opinion filed May 8, 1997.

Martin J. Dubowsky, of Martin J. Dubowsky, Ltd., of Chicago and R. Bruce Holcomb, of Dickstein, Shapiro, Morin & Oshinsky, L.L.P., of Washington, D.C., for appellant.

John B. Haarlow, Michael P. Comiskey, and Jennifer A. O'Malley, all of Lord, Bissell & Brook, of Chicago, for appellees American Motorists Insurance Company, Liberty Mutual Insurance Company and Continental Casualty Company.

John S. Vishneski III, of Keck, Mahin & Cate, of Chicago, and Eugene R. Anderson, Michael R. Magaril, and Tara A. Griffin, all of Anderson, Kill & Olick, P.C., of New York, New York (Amy R. Bach, of San Francisco, California, of counsel), for *amicus curiae.*

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

In this insurance coverage case the trial court first had to determine which state's law governs the parties' rights and obligations. The answer to that question determines whether the insurance companies had to reimburse Maremont Corporation (Maremont) for money it spent settling a lawsuit filed by a corporation that owned a South Carolina site allegedly polluted by Maremont.

The trial court drew the issue: if South Carolina law controls, the insurance companies do not have to reimburse Maremont. If Illinois law controls, they do.

The trial court applied South Carolina law. All claims for reimbursement for settlement costs concerning the South Carolina site were dismissed by way of summary judgment. Because we conclude that Illinois law should have been applied, we reverse and remand.

FACTS

The facts that apply to the defendants' summary judgment motions are not disputed. The case before us concerns Maremont's claims against four of its insurance companies in connection with a single site in South Carolina. We set out those facts necessary to a resolution of Maremont's appeal. Because the case involves summary judgment based on a choice of law issue, our review is *de novo. Malatesta v. Mitsubishi Aircraft International, Inc.,* 275 Ill. App. 3d 370, 384, 655 N.E.2d 1093 (1995).

Maremont manufactures automotive parts. It was founded in Chicago, Illinois, in 1877. Maremont is now a Delaware corporation that conducts its business out of Chicago.

The defendants are Edward William Cheshire (Cheshire), American Motorists Insurance Company (AMICO), Continental Insurance Company (Continental), and Liberty Mutual Insurance Company (Liberty Mutual).

Cheshire, AMICO, and Continental provided Maremont with standard excess policies. Liberty Mutual issued comprehensive general liability policies to Maremont.

The Cheshire policy promised to indemnify Maremont for:

"all sums which the Assured shall be obligated to pay by reason of

the liability *** for damages, direct or consequential and expenses, all as more fully defined by the term 'ultimate net loss' on account of *** Property Damage *** caused by or arising out of each occurrence happening anywhere in the world."

The Cheshire policy defined "ultimate net loss" as "the total sum which the Assured *** become[s] obligated to pay by the reason of *** property damage *** either through adjudication or compromise and shall also include *** all sums paid *** for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence."

The other policies contained similar language.

Maremont purchased policies from Cheshire that provided coverage between 1962 and 1968. When Maremont bought the policies, Cheshire conducted business in Illinois. At that time, Maremont was an Illinois corporation. Chicago was Maremont's principal place of business. The policies were negotiated in Chicago. Notice was to be given to Cheshire's agent in Illinois. The policies covered risks in several states, including Illinois.

Maremont's policies with Continental provided coverage from 1959-62, 1966-75, and 1976-80. Continental is an Illinois corporation. Its principal place of business is Illinois. Maremont negotiated and purchased these policies in Chicago. The policies were issued in Chicago. Notice was to be given in Illinois. The Continental policies covered risks in several states, including Illinois.

The AMICO policy covered the period from 1975 to 1976. AMICO is an Illinois corporation with offices in Illinois. The policy was negotiated and procured in Chicago. It was issued in Chicago. Notice was to be given to AMICO in Illinois. The policy covered risks in several states.

Liberty Mutual's comprehensive general liability policies covered the years 1956-62. The policies were issued to Saco-Lowell Shops, Inc. Saco-Lowell was a corporation based in Massachusetts. Maremont obtained a controlling interest in Saco-Lowell in 1960. Liberty Mutual is a Massachusetts company. Liberty Mutual does business in Illinois. Out of all the polices Maremont claims Liberty Mutual issued it, only one is available, covering the period from 1960-61.

None of the policies contains an express choice of law provision.

Maremont brought a declaratory judgment action against its insurers. Maremont sought defense costs and indemnification of costs arising out of six environmental claims against Maremont in five states—South Carolina, California, Oklahoma, Massachusetts, and Indiana. One of the claims concerned a site in Easley, South Carolina (Easley Site). Platt Saco Lowell Corporation (PSL) owned the

manufacturing facility on the site. The facility formerly had been operated by Maremont. Maremont had sold the Easley Site to the corporate predecessor of PSL in 1973.

In 1978, a South Carolina agency discovered environmental contamination at the Easley Site. PSL was required by South Carolina to clean up the cite. In 1991, PSL filed a suit against Maremont in the United States District Court for the District of South Carolina, claiming that Maremont had caused property damage to the site. It claimed that the site's surface water, ground water, and soil had been contaminated by Maremont's disposal of solid and hazardous wastes at the site.

Maremont settled the claim with PSL. Among other things, the settlement agreement provided:

> "Eighth: This Release is made and entered into for the sole protection and benefit of the parties hereto, and no other person, persons, entity or entities shall have any rights of action hereon, right to claim any right or benefit from the provisions hereof, or be deemed to be a third party beneficiary hereof."

and

> "Thirteenth: This Release shall be governed by and construed and enforced in accordance with the laws of South Carolina. The language of all parts of this Release shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either of the parties hereto."

Cheshire, individually and as a representative of Certain Underwriters at Lloyd's of London, sought partial summary judgment concerning its responsibility to reimburse Maremont for costs incurred at the Easley Site. It argued that South Carolina law applied to its insurance policy. Under South Carolina law, claimed Cheshire, the costs incurred by Maremont at Easley were not "damages" covered by the Cheshire policies.

The trial court granted Cheshire's motion. The other defendants—AMICO, Continental, and Liberty Mutual—then were allowed to join Cheshire's motion for partial summary judgment. The trial court granted the defendants' motions. All of the trial court's orders contained Rule 304(a) (134 Ill. 2d R. 304(a)) language finding there was no just reason to delay their enforcement or appeal. This appeal concerns only the Easley Site.

DECISION

The trial court assumed Maremont was seeking reimbursement for equitable damages. It then concluded that under South Carolina law comprehensive general liability insurance policies covered only

legal damages. Once the trial court decided that South Carolina law applied, the case concerning the Easley Site was over. Maremont contended that the settlement it made with PSL included legal, as well as equitable, damages. Because we conclude the trial court should have applied Illinois law, there is no need to analyze the dollar nature of the South Carolina settlement.

■ The parties seem to agree that if Illinois law were to apply in this case the insurance companies would have to provide coverage. Illinois law does not distinguish between legal and equitable damages when determining coverage under a comprehensive general liability policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 116, 607 N.E.2d 1204 (1992).

In the trial court, and here, Maremont relied on *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 655 N.E.2d 842 (1995), another insurance coverage case dealing with environmental contamination. There, the all-risk policy covered six different states. The policy was delivered in Illinois. Lapham-Hickey is an Illinois corporation. Protection is licensed to do business in Illinois. The only connection Minnesota had to the lawsuit was that the polluted site was located there. The policy was silent on choice of law for resolving coverage disputes, although it did contain two very specific and limited situations where the location of the property would determine the law to be applied.

■ Generally, the supreme court held, insurance policy provisions are "governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract." *Lapham-Hickey*, 166 Ill. 2d at 526-27, quoting *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill. 2d 522, 528, 322 N.E.2d 454 (1975).

The *Lapham-Hickey* and *Hofeld* choice of law tests for insurance contracts are broader than the site-focused approach taken in the Restatement (Second) of Conflict of Laws, relied on by the insurance companies in this case. See Restatement (Second) of Conflict of Laws § 193 (1971). In fact, the supreme court in *Lapham-Hickey* never mentioned the Restatement.

In *Lapham-Hickey*, the court held Illinois law applied to the policy:

> "Therefore, to obtain a consistent interpretation of the policy and to reasonably apply Illinois choice of law principles, Illinois law must govern the interpretation of this policy." *Lapham-Hickey*, 166 Ill. 2d at 527.

The factual similarities between *Lapham-Hickey* and this case are striking. The policies here cover sites in five states. At the time Maremont entered into or acquired these insurance contracts it was an Illinois corporation. At all times, Illinois was Maremont's place of business. Continental and AMICO are Illinois corporations doing business in Illinois. Cheshire and Liberty Mutual are licensed to do business in Illinois. All policies with the possible exception of those of Liberty Mutual were negotiated, purchased, and delivered in Illinois. Other than being the location of the polluted site, South Carolina had nothing to do with the negotiating, purchasing, delivering or performing of the insurance policies.

These policies say nothing about which state's law will determine coverage, but throughout the policies we find references to state law provisions in certain limited circumstances.

Faced with *Lapham-Hickey*, the trial judge focused on one factor that did not exist in the supreme court decision—the South Carolina settlement agreement. It is clear to us that the trial judge relied on the settlement between Maremont and PSL. He said so, several times.

On December 5, 1995:

> "And in the Court's opinion [the settlement agreement] controls the issue which is before the Court *** the choice of law issue ***. And, accordingly, I find that the choice of law is and has been exercised by the parties to this release, one of whom was the insured's corporation. And they have, in fact, selected South Carolina to be the site wherein the law applies."

And on December 14, 1995:

> "My ruling was based upon the settlement agreement between the corporation insured and the successor corporation. *** Clearly my ruling was predicated on that settlement agreement."

On June 10, 1996:

> "The only thing the Court is saying is that the choice of law is that the Maremont Corporation is bound by the choice of law made in their contract between Maremont and its successor in interest."

The trial court cited no precedent that would allow it to base a choice of law decision on a settlement agreement between the insured and a third party. We are aware of none. In fact, we have said third parties cannot take advantage of the choice of law provisions in contracts they did not sign.

In *Jakubik v. Jakubik*, 208 Ill. App. 3d 119, 566 N.E.2d 808 (1991), the wife's attorney wanted to adopt the choice of law provision described in the husband's retirement account agreement with a trust company so that he could collect his fee from the husband's in-

dividual retirement account. The court held the "wife's attorney was neither bound by its terms, nor can he invoke its terms as a bar to the application of Illinois law." *Jakubik*, 208 Ill. App. 3d at 122.

■ Any reasonable reading of the settlement agreement in this case leads to the conclusion that the release never was intended to apply to third parties. Paragraph eight needs no interpretation:

> "This release is made and entered into for the sole protection and benefit of the parties hereto, and no other person, persons, or entity or entities shall have any rights of action hereon, right to claim any right or benefit from the provisions hereof, or be deemed to be a third party beneficiary hereof."

Clearly, Maremont and PSL intended that the settlement provisions were to benefit no one but Maremont and PSL. The trial court brushed off paragraph eight because it concluded the insurance companies did not receive adequate notice of the settlement. Whether they did is not clear in the record. In fact, it appears that all companies other than Liberty Mutual did have notice. At any rate, we do not see why lack of notice to the companies would matter. We believe the trial court erred when it held that the settlement agreement in South Carolina controlled the choice of law in this case.

We see no reason for further litigation of the choice of law issue. *Lapham-Hickey* compels us to hold that Illinois law applies to this dispute. In that way, the parties can "obtain a consistent interpretation" of the policies. *Lapham-Hickey*, 166 Ill. 2d at 527. A contrary result would open these policies to five different views of the law, depending on the site of the risk. That would not be good policy or good law.

While the facts applicable to Liberty Mutual's policies are not as compelling, we see no basis in the record to treat that company any differently.

## CONCLUSION

We therefore reverse the trial court's order granting summary judgment to the insurance companies and remand this cause for proceedings consistent with this opinion.

Reversed and remanded.

McNAMARA and CERDA, JJ., concur.