CSX TRANSPORTATION, INC., Plaintiff,

v.

LEXINGTON INSURANCE
CO., et al., Defendants.

No. 98 C 3224.

United States District Court,
N.D. Illinois,
Eastern Division.

March 16, 1999.

Angela Coumas, Illinois Attorney General's Office, Chicago, IL, Mitchell Alan Orpett, H. Wesley Sunu, Tribler, Orpett & Crone, Chicago, IL, for CSX Transportation, Inc., plaintiff.

Henry R. Daar, Peter E. Kanaris, David E. Heiss, Daar, Fisher, Kanaris & Vanek, P.C., Chicago, IL, for Lexington Insurance Company, International Surplus Lines Insurance Company, National Union Fire Insurance of Pittsburgh, PA, defendants.

Robert Marc Chemers, Andrew G. Witik, Pretzel & Stouffer, Chtd., Chicago, IL, Henry R. Daar, Peter E. Kanaris, David E. Heiss, Daar, Fisher, Kanaris & Vanek, P.C., Chicago, IL, for Home Insurance Company, defendant.

Henry R. Daar, Peter E. Kanaris, David E. Heiss, Daar, Fisher, Kanaris & Vanek, P.C., Chicago, IL, for Lexington Insurance

Company, International Surplus Lines Insurance Company, National Union Fire Insurance of Pittsburgh, PA, counter-claimants.

Angela Coumas, Illinois Attorney General's Office, Chicago, IL, Mitchell Alan Orpett, H. Wesley Sunu, Tribler, Orpett & Crone, Chicago, IL, for CSX Transportation, Inc., counter-defendant.

Robert Marc Chemers, Andrew G. Witik, Pretzel & Stouffer, Chtd., Chicago, IL, Henry R. Daar, Peter E. Kanaris, David E. Heiss, Daar, Fisher, Kanaris & Vanek, P.C., Chicago, IL, for Home Insurance Company, counter claimant.

Angela Coumas, Illinois Attorney General's Office, Chicago, IL, Mitchell Alan Orpett, H. Wesley Sunu, Tribler, Orpett & Crone, Chicago, IL, CSX Transportation, Inc., counter-defendant.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Plaintiff, CSX Transportation, Inc. ("CSXT"), has brought this action against Lexington Insurance Co., Home Insurance Co., International Surplus Lines Insurance Co.[1] and National Union Fire Insurance Co. of Pittsburgh, PA, alleging that defendants wrongfully denied benefits under a single, all-risk insurance policy ("the policy"). Plaintiff also brought a claim for punitive damages and claims under Florida statutory law for bad faith denial of coverage and unfair claim settlement practices.

Defendants Lexington Insurance Co. and Home Insurance Co. currently have two pending motions. The first is a motion to dismiss in which defendants claim that Illinois law applies to this action and that plaintiff's claims for bad faith denial of coverage, unfair claim settlement practices, and punitive damages are not recognizable under Illinois law. The second motion is a motion to compel plaintiff to produce timesheets and correspondence and to have its former attorneys submit to depositions concerning the

work they performed on the underlying action for which plaintiff is claiming defendants wrongfully denied coverage. Defendants, again citing Illinois law, claim that no attorney-client privilege exists when an insured seeks coverage for reasonable attorneys fees incurred in an underlying action. *Waste Management v. International Surplus*, 144 Ill.2d 178, 161 Ill.Dec. 774, 579 N.E.2d 322 (1991). Plaintiff responds that it is Florida law that governs this action. Consequently, it claims, defendants' motions must be denied because under Florida law, the attorney-client privilege protects the information defendants seek to discover and because Florida law clearly recognizes its claims for punitive damages, bad faith denial of coverage and unfair claims settlement practices.[2] *Kujawa v. Manhattan National Life Insurance Co.*, 541 So.2d 1168 (Fla.1989).

There is no choice-of-law provision in the policy itself. The parties acknowledge that a conflict exists on the relevant issues between Illinois and Florida law and so the court must choose between them. As this action was filed in Illinois, its choice-of-law rules apply. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In Illinois, choice of law as to insurance policies is generally "governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to the valid contract, the place of performance, or other place bearing a rational relationship to the general contract." *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill.2d 520, 211 Ill.Dec. 459, 462, 655 N.E.2d 842, 845 (1995) (quoting *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill.2d 522, 322 N.E.2d 454 (1975)). "The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." *Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136

---

1. Plaintiff has indicated that it has entered a settlement agreement with International Surplus Lines Insurance Co., which will be dismissed from the case.

2. Plaintiff also claims that even if Illinois law applies, the attorney-client privilege still acts as a bar to discovery of the information at issue.

F.3d 1116, 1122 (7th Cir.1998) (citing *Society of Mount Carmel v. National Ben Franklin Ins. Co. of Ill.*, 268 Ill.App.3d 655, 205 Ill.Dec. 673, 679, 643 N.E.2d 1280, 1286 (1994)).

Defendant argues that the location of the insured risk in this instance is in Illinois and that under Illinois's significant contacts test, this factor is the most important in determining which state's law applies. *American Builders & Contractors Supply Co. v. Home Insurance Co.*, 1997 WL 43017 (N.D.Ill.). They assert that Illinois has the greatest interest in the insured risk in this case—the steel railroad bridge spanning the Calumet River. *United States Gypsum Co. v. Admiral Insurance Co.*, 268 Ill.App.3d 598, 205 Ill.Dec. 619, 643, 643 N.E.2d 1226, 1250 (1994). In *Lapham–Hickey*, though, the Illinois Supreme Court applied Illinois law— where the contract was negotiated and delivered—even though the underlying action occurred in Minnesota and the insured risk at issue was located in Minnesota. *Id.* at 526, 211 Ill.Dec. at 462, 655 N.E.2d at 845 The policy was delivered in Illinois, the plaintiff was an Illinois corporation and the insurer was licensed to do business in Illinois. *Id.* In concluding that Illinois had the most significant relationship with the case, the court relied on the place of the policy's delivery rather than the place of the insured risk because the policy covered property located in six different states. It based the choice of Illinois law on the need "to obtain a consistent interpretation of the policy." *Id.* at 527, 211 Ill.Dec. at 462, 655 N.E.2d at 845. *See also Maremont Corp. v. Cheshire*, 288 Ill. App.3d 721, 224 Ill.Dec. 233, 236, 681 N.E.2d 548, 551 (1997).

The Seventh Circuit has indicated that it finds the Illinois Supreme Court's approach in *Lapham–Hickey* unclear. *Lee v. Interstate Fire & Casualty Co.*, 86 F.3d 101, 103 (7th Cir.1996). It noted that the Illinois Supreme Court's "formulation does not choose between the old, formal approach and the modern, 'contract' approach; instead it includes elements of both, without offering any guidance for what happens when a contract of insurance is delivered in one state but covers a risk in another." *Id.* However, it interpreted *Lapham–Hickey* as articulating a choice-of-law policy that looks to consistent interpretation of an insurance policy rather than one that looks only to the place of the policy's negotiation and delivery. *Id.* In *Lee*, the Seventh Circuit held that the state where the insured risk was located had more significant contacts with the policy than the state where the policy was delivered. *Id.* But it did so because it held that Illinois would not apply "multiple bodies of law to a single disputed term." *Id.* Choosing the state where the insured risk was located achieved that end. *Id.*

■ The facts in this case are quite similar to those in *Lapham–Hickey*. CSXT is a Virginia corporation with its principle place of business in Florida. Home Insurance is a New Hampshire corporation with its principle place of business in New York. Lexington is a Delaware corporation with its principle place of business in Boston. All defendants are licensed to do business in Florida. The policies at issue cover CSXT property throughout the country, including in Florida, Georgia, North Carolina, Maryland, Tennessee, Virginia, West Virginia and Illinois. All of CSXT's activity regarding the negotiation and purchase of its insurance policies occurred in Florida. The court therefore finds that the Illinois Supreme Court would apply Florida law to the insurance policy at issue in this case. Defendants' motion to dismiss plaintiff's claims of bad faith denial of coverage, unfair claim settlement practices, and punitive damages is therefore denied, as they do not dispute that these claims are recognized under Florida law.

■ Plaintiff has also cited to Florida law in its opposition to the motion to compel material it claims is protected by attorney-client privilege. That raises the question of whether the above analysis as to choice of law is applicable to the issue of attorney-client privilege. In the points and authorities submitted to the court on the motion to compel, plaintiff asserts that under Florida law, the Florida statute creating the bad faith cause of action did not abolish the attorney-client or work-product privileges. Defendant, while not directly addressing any choice of law on this issue, cites mainly to

Illinois law and not at all to Florida law. The choice does have a real effect, as the Florida Supreme Court has held that the statute creating a bad faith cause of action against insurers does not abrogate the attorney-client privilege. *Kujawa v. Manhattan National Life Insurance Co.,* 541 So.2d 1168 (Fla.1989). Although the Florida Supreme Court has not specifically ruled on the issues addressed in *Waste Management,* the Florida Appellate Court has specifically rejected the Illinois Supreme Court's holding in *Waste Management,* relying on Florida Supreme Court case law. *Eastern Air Lines, Inc. v. United States Aviation Underwriters, Inc.,* 716 So.2d 340, 342–43 (Fl.App.1998) (citing *Kujawa v. Manhattan National Life Insurance Co., supra* ).

A district court sitting in diversity applies the law of the state in which it sits regarding privilege. Fed.R.Evid. 501. The question becomes, then, whether Illinois would apply Florida or Illinois law regarding attorney-client privilege. Several cases indicate indirectly that the state supplying the rule of decision in substantive issues also supplies the rule of attorney-client privilege. *Vaccaro v. MSG (Illinois), Inc.,* 789 F.Supp. 924, 926–27 (N.D.Ill.1992) ("because this is a diversity case in which Illinois law supplies the rule of decision, Illinois law on the attorney-client privilege also applies"), *Dietz v. United States,* 1992 WL 26712 (N.D.Ill.). However, these cases address the choice between state and federal law as it relates to attorney-client privilege in a diversity action and not a choice-of-law decision between two states. Acknowledging that state law applies, the issue here is whether Illinois courts would apply their own or Florida law to the question of attorney-client privilege when Florida law applies to the contract at issue in the case.

Discovery issues that arise in Illinois are generally governed by Illinois law. *See Mistler v. Mancini,* 111 Ill.App.3d 228, 67 Ill.Dec. 1, 4, 443 N.E.2d 1125, 1128 (1982) ("Discovery in Illinois in aid of an action pending in another state must be conducted pursuant to Illinois rules."). *See also Consolidation Coal Co. v. Bucyrus–Erie Co.,* 93 Ill.App.3d 35, 48 Ill.Dec. 568, 416 N.E.2d

1090 (1980) (even if Wisconsin had most significant contact to issue of attorney-client privilege, Illinois law would apply to litigation in Illinois courts). Because the discovery at issue is taking place in Illinois, as did the discovery in the underlying case, the court will therefore apply Illinois law to the motion to compel. Therefore, while Florida law applies to issues concerning the insurance policy, Illinois law applies as to discovery issues, including attorney-client privilege.

 Defendants maintain that the Illinois Supreme Court's holding in *Waste Management v. International Surplus* is directly on point to the issue presented here. 144 Ill.2d 178, 161 Ill.Dec. 774, 579 N.E.2d 322 (1991). In *Waste Management,* the insured owned five hazardous waste sites and had purchased insurance policies that provided indemnity for defense costs arising out of lawsuits concerning those sites. *Id.* at 161 Ill.Dec. at 776–77, 579 N.E.2d at 324–25. The insured sought coverage for defending and settling one such lawsuit. The insurers denied coverage, which resulted in litigation between the parties. During discovery, the insured objected to the insurer's request for all documents relating to the underlying litigation, asserting that they were protected by attorney-client or work-product privileges. *Id.* at 777, 579 N.E.2d at 325. The Illinois Supreme Court noted that the insured had placed the conduct of defense counsel in the underlying litigation "at issue" in the case, waiving the attorney-client privilege. *Id.* at 779, 579 N.E.2d at 327. However, it found that this determination was "of no moment" because the attorney-client privilege simply had no application to the case because the common-interest doctrine rendered the attorney-client privilege inapplicable. *Id.* This doctrine applies when an attorney acts for two clients who share a common interest, rendering communications between one client and the attorney unprotected by attorney-client privilege in subsequent litigation between the two clients. *Id.* at 780, 579 N.E.2d at 328. Because the insurer and insured had a joint interest in defending the underlying litigation, even though the insurer *provided no defense and did not participate in that litigation,* the court in *Waste Management* held that the common-interest doc-

trine applied and the attorney-client privilege was simply inapplicable.[3] "In a limited sense, counsel for insureds did represent both insureds and insurers in both of the underlying litigations since insurers were ultimately liable for payment if the plaintiffs in the underlying action received either a favorable verdict or settlement. To deny discovery in this instance would be to disregard considerations of public policy which require encouragement of full disclosure by an insured to his insurer." *Id.* at 781, 579 N.E.2d at 329.[4]

The facts in *Waste Management* as they applied to the court's ruling on the common-interest issue are virtually indistinguishable from the instant situation. Both cases involve indemnity policies that resulted in disputes between insured and insurer because of denial of coverage for the underlying litigation. Both involve situations where the insured procured its own defense counsel in the underlying litigation and the insurer did not participate in that litigation. The court finds, therefore, that the holding in *Waste Management* concerning the common interest of the parties applies to this case. No attorney-client privilege is available to plaintiff as to issues in the underlying litigation.

The court finds that the holding in *Waste Management* does not apply, however, to communication between plaintiff and its attorney regarding the adversarial relationship between plaintiff and defendants that developed during the underlying litigation. No common interest existed as to issues regarding possible denial of coverage, regardless of whether they arose during the underlying litigation. In the court's view, requiring production of this information is more analogous to requiring production of attorney-client communication from the instant litigation between insurer and insured. Plaintiff may therefore redact information relating to the prosecutorial issues counsel addressed during the underlying litigation. However, ac-

cording to the chronology mentioned during oral argument on the motion to compel, it appears that an adversarial relationship between the parties did not arise until 1990, nearly two years into the litigation. Therefore, the amount of information that would be protected by attorney-client privilege appears to be minimal.

■ There is a remaining issue that the parties may need to further address. Some of the material from the underlying litigation falls under the classification of work-product and not attorney-client communication. The Illinois Supreme Court's holding in *Waste Management* applied to both types of protected information. However, this court must apply federal law to the issue of whether attorney work-product is discoverable. *A.O. Smith Corp. v. Lewis, Overbeck & Furman,* 1991 WL 192200, *4 (N.D.Ill.) ("Because the source of law in work-product terms is federal rather than state, the treatment of that subject by the Illinois Supreme Court in *Waste Management* does not apply here."). Placing a matter at issue can result in waiver of the work-product protection. *Pyramid Controls, Inc. v. Siemens Industrial Automations, Inc.,* 176 F.R.D. 269, 276 (N.D.Ill.1997). As defendants concentrated mainly on the holding in *Waste Management* during oral argument, the court finds that the issue of whether plaintiff has waived the protection of the work-product doctrine under federal law was not clearly addressed. Should this issue need further resolution, the parties are directed to file briefs not in excess of six pages that discuss federal, not state, law on the issue and how it applies to the instant factual situation.

For the foregoing reasons, the court grants the motion to compel in part and denies it in part. Plaintiff is ordered to produce material from the underlying litigation that it claims is protected by attorney-client privilege. However, plaintiff may re-

---

**3.** This determination was independent of the court's finding that the policy's cooperation clause required the insured to produce all communications with defense counsel in the underlying action. *Id.* at 161 Ill.Dec. 780, 579 N.E.2d at 328.

**4.** The court also based its holding on the cooperation clause in the insurance policy at issue, finding that it "imposed upon insureds the duty to assist insurers in the conduct of suits and in enforcing any right to contribution or indemnity against persons potentially liable to insureds." *Id.* at 779, 579 N.E.2d at 327.

dact privileged information that addresses the prosecutorial or adversarial issues raised during the latter part of the underlying litigation.

ORDERED: The court denies defendants' motion to dismiss, and grants the motion to compel in part and denies it in part.